No. 54,745

Minter-Wilson Drilling Co., Inc., *Appellee and Cross-Appellant,* v. Clifford M. Randle, Mary E. Randle and Raymond Randle, *Appellants and Cross-Appellees.*

(675 P.2d 365)

Opinion filed January 13, 1984.

*Scott E. Daniel,* of Daniel & Daniel, of Garden City, argued the cause and was on the briefs for the appellants and cross-appellees.

*Charles E. Owen, II,* P.A., of Garden City, argued the cause, and *Jackie Rapstine,* of Garden City, was with him on the brief for the appellee and cross-appellant.

The opinion of the court was delivered by

Lockett, J.: The defendants, Clifford M. Randle, Mary E. Randle and Raymond Randle (appellants) appeal from the district court's judgment against them. The district court found that the defendants had been unjustly enriched $25,000.00 at the expense of the plaintiff, Minter-Wilson Drilling Co., Inc. (M-W). M-W cross-appeals contending the amount of the judgment was inadequate.

The Randles are co-owners of property in Finney County, Kansas. From 1969 to 1975 the property was rented out as pasture land. Three quarter-sections of the land were part of a new lease negotiated between the Randles and Rodney Ardery (Ardery) to begin on January 1, 1975, for a term of fifteen years. Ardery was to develop the land so that it was suitable for farming. In addition, Ardery was to drill irrigation wells on the property and install the equipment necessary to irrigate the land at his expense. Ardery would give the Randles 25% of the crops grown on the land.

Ardery negotiated with M-W for the purchase of water pumps and pipe, to drill the wells and install the pumping equipment purchased from M-W on the Randle land. M-W was to drill and

equip the wells for a cost of $57,081.00. The cost included $42,170.00 for the equipment installed and the remainder for the drilling of the holes. Ardery paid M-W $14,271.00 as a down payment. Ardery and M-W contracted that the balance due M-W for the drilling and pumping equipment plus the finance charges was to be paid by Ardery in four annual installments of $14,094.75 each. On January 27, 1975, M-W sold the pumping equipment to Ardery (without retaining a security interest in the equipment). M-W assigned its contract with Ardery to the F.M.C. Corporation Pump Division (FMC). M-W unconditionally guaranteed to FMC the complete indebtedness of Ardery. The Randles did not participate in the negotiations between Ardery and M-W, although they knew M-W had been hired to drill the wells. M-W completed the drilling and installed the pumps on three wells in March, 1975.

Ardery planted crops on the land in 1975, 1976 and 1977. The Randles netted $85.00 from the crop share in 1975. They suffered a loss of $3,300.00 on the property in 1976. In 1977, Ardery had severe financial problems and was unable to secure financing to plant that year's crops. Raymond and Clifford Randle signed a loan guaranty for Ardery with the State Bank of Satanta (Bank), so that Ardery could borrow $165,000.00 needed to plant a crop in 1977. The Bank took the 1977 crop as security for its loan. The value of the 1977 crop, when harvested, was $24,600.00 short of the loan amount and the Randles were still paying on this loan on the trial date, January 17, 1983. In 1977, the Randles and Ardery agreed to terminate their farm lease agreement.

The Randles' property was leased to Ardery's mother in 1978 and 1979. Because of expenses, the Randles received no crop payments from the tenant. In 1980, the property was leased to another tenant who remained the tenant as of the date of trial in this matter, January 17, 1983.

The Randles and Ardery made a payment of $17,500.00 to FMC in April, 1977. Ardery subsequently defaulted on the contract with FMC with almost $40,000.00 still owing. On June 5, 1979, FMC filed an action against M-W for the balance due on the contract with Ardery, which M-W had guaranteed. M-W joined Ardery as a third-party defendant. On October 31, 1979, summary judgment was granted against M-W. M-W paid $40,000.00 to FMC in satisfaction of the judgment on November

26, 1979. Ardery filed a confession of judgment to M-W on December 4, 1979, for $42,000.00.

Some time in December, 1979, M-W's attorney notified Raymond Randle by letter that M-W had a claim against the Randles for payment for the well equipment it had supplied Ardery. M-W wanted possession of the well equipment or payment for the equipment. Raymond Randle spoke with the secretary-treasurer of M-W in person in January, 1980, concerning the equipment. The M-W officer informed Randle that they expected to be paid for the well equipment or have the well equipment returned to them. The two men discussed the possible purchase of the well equipment. Randle stated he would visit with his brother and sister-in-law, co-owners of the farm property, about the purchase of the equipment. No agreement on the purchase of the equipment was reached between the Randles and M-W. M-W decided to pick up its equipment and notified the Randles of its decision. The Randles would not permit M-W to take the equipment and the Randles claimed an interest in the well equipment because of their farm lease with Ardery.

On February 15, 1980, M-W filed an action against the Randles seeking payment of their $42,000.00 judgment against Ardery, reasonable use value of the well equipment or the return of the equipment. M-W proceeded on two theories: First, that the Randles had guaranteed Ardery's contract payments to M-W; secondly, that the Randles were unjustly enriched by their use of the wells without payment. On April 10, 1980, the Randles filed their answer claiming no interest in the equipment M-W sold to Ardery. The Randles filed a third-party petition against Ardery demanding judgment over and against Ardery for any judgment M-W obtained against them.

On September 22, 1980, Ardery filed for bankruptcy in the United States District Court for the District of Kansas listing M-W and the Randles as unsecured creditors. Ardery failed to include the well equipment purchased from M-W as an asset in the bankruptcy. On May 19, 1981, Ardery was granted a "Discharge of Debtor" and thereafter released as a third-party defendant by the trial court.

M-W filed a motion requesting that they be allowed to remove the well equipment. On December 10, 1980, the court ordered the Randles to stop using the wells and equipment involved in

the pending action. The order was vacated on September 2, 1981. On April 8, 1982, the Randles moved for summary judgment and the trial court granted the motion for summary judgment on the guarantee theory, but not on the unjust enrichment theory. A trial was conducted to the court on January 17, 1983. The court determined that M-W should have the right to possession of the pumping equipment or a money judgment against the Randles in the amount of $25,000.00. The judge allowed the Randles to choose which judgment should be awarded M-W. The Randles requested the court to award a money judgment to M-W. The court found the Randles had been unjustly enriched in the amount of $25,000.00. The Randles appeal the court's judgment.

After examination of the record, we have determined that the trial court erred in its judgment. Neither M-W nor the Randles were the owners of the pumping equipment. Therefore, M-W could not obtain a judgment against the Randles for unjust enrichment nor could the Randles be granted title to the pumping equipment.

M-W originally sold Ardery the pumping equipment January 27, 1975. M-W failed to secure any interest in the equipment it sold Ardery. Ardery was only indebted to M-W on his note for the balance of the purchase price and finance charges. On January 27, 1975, M-W assigned the note to FMC. When Ardery failed to pay the installments due on the note, FMC filed an action June 5, 1979, against M-W who had guaranteed Ardery's note. M-W joined Ardery as a third-party defendant claiming Ardery was indebted to M-W under the note. On October 31, 1979, FMC was granted summary judgment against M-W. M-W paid $40,000.00 to FMC in satisfaction of the judgment on November 26, 1979. On December 4, 1979, Ardery confessed judgment to M-W for $42,000.00. M-W obtained only a money judgment; it had not claimed nor obtained any interest in the pumping equipment it originally sold Ardery.

The Randles entered into a farm lease with Ardery January 1, 1975. The Randles never claimed any title to the pumping equipment purchased by Ardery and denied any obligation due M-W because of Ardery's contract with M-W for the purchase of the equipment. The Randles' only right to the pumping equipment could arise if Ardery failed to give the Randles one-fourth

of the crops harvested during the farm lease. The farm lease contained a provision that allowed the Randles an equitable lien on Ardery's share of the crops or his personal property located on the Randles' land, if he failed to give the Randles their share of the crops. The Randles received their share of the growing crops each year the lease was in effect and therefore could not claim an equitable lien.

Ardery, the owner of the pumping equipment, filed for bankruptcy. M-W and the Randles were listed as unsecured creditors in the bankruptcy. When Ardery received his discharge in bankruptcy, the M-W judgment claim of $42,000.00, and any equitable claims due the Randles, was legally discharged. Later, when Ardery was dismissed as a third-party defendant in this case, there remained no person claiming ownership of the property that the court could affect with its judgment.

Title to the pumping equipment is actually vested in the bankruptcy trustee. Ardery's failure to list the equipment as an asset did not deprive the trustee in bankruptcy of the property. Who is entitled to the pumping equipment is not a question for the Kansas courts in this action, but for the United States Bankruptcy Court for the District of Kansas. When a district court has no jurisdiction of the subject matter of the appeal, an appellate court does not acquire such jurisdiction by an appeal from the ruling of the district court. An appellate court may raise the question of jurisdiction on its own motion. When a court is without jurisdiction of the subject matter of an action, its authority in respect thereto extends no further than to dismiss the action. *In re Miller*, 228 Kan. 606, Syl. ¶ 2, 620 P.2d 800 (1980).

The trial court is reversed and the case is remanded for dismissal for lack of jurisdiction.